IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROBERT JOSEPH WELCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:16-cv-899-TFM |
| | ) [wo] |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Following administrative denial of his application for Supplemental Security Income benefits under Title XVI of the Social Security Act, Robert Joseph Welch ("Welch" or "Plaintiff") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Judicial review proceeds pursuant to 42 U.S.C. § 405(g), 42 U.S.C. § 1383(c)(3), and 28 U.S.C. § 636(c), and for reasons herein explained, the Court concludes the Commissioner's decision denying supplemental security income benefits should be **REVERSED** and **REMANDED**.

**I. NATURE OF THE CASE**

Welch requests judicial review of the Commissioner of Social Security Administration's decision denying his application for supplemental security income benefits. United States district courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405 (2006). The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is narrowly circumscribed. The court reviews a social security case solely to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Winschel*, 631 F.3d at 1178 (stating the court should not re-weigh the evidence). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999); *see also Kosloff v. Comm'r of Soc. Sec.*, 581 F. App'x 811, 811 (11th Cir. 2015) (citing *Kelley*).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Winschel*, 631 F.3d at 1178 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("even if the evidence

preponderates *against* the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (citation omitted). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption that the Secretary's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[1] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2] Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner utilizes a five-step, burden-shifting analysis to determine when claimants are disabled. 20 C.F.R. §§ 404.1520;[3] *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); *O'Neal v. Comm'r of Soc. Sec.*, 614 F. App'x 456, 458 (11th Cir. June 10, 2015). The ALJ determines:

(1) Whether the claimant is currently engaged in substantial gainful activity;

(2) Whether the claimant has a severe impairment or combination of impairments;

(3) Whether the impairment meets or exceeds one of the impairments in the listings;

(4) Whether the claimant can perform past relevant work; and

(5) Whether the claimant can perform other work in the national economy.

---

[3] For the purposes of this appeal, the Court utilizes the versions effective until March 27, 2017 as that was the version in effect at the time of the ALJ's decision and the filing of this appeal.

*Winschel*, 631 F.3d at 1178; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). When a claimant is found disabled – or not – at an early step, the remaining steps are not considered. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on the claimant through Step 4. *See Ostborg v. Comm'r of Soc. Sec.*, 610 F. App'x 907, 915 (11th Cir. 2015); *Phillips*, 357 F.3d at 1237-39. A *prima facie* case of qualifying disability exists when a claimant carries the Step 1 through Step 4 burden. Only at the fifth step does the burden shift to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4). RFC is what the claimant is still able to do despite the impairments, is based on all relevant medical and other evidence, and can contain both exertional and nonexertional limitations. *Phillips*, 357 F.3d at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. In order to do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert. *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2

these factors can independently limit the number of jobs realistically available to an individual. *Id*. at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. Otherwise, the ALJ may use a vocational expert. *Id.* A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments. *Id*. In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

## IV. BACKGROUND AND PROCEEDINGS

Welch claims disability due to cancerous skin lesions, back injury/pain, hypertension, and anxiety/panic attacks. (R. 361). Following initial administrative denial of his claim, Welch requested a hearing before an administrative law judge ("ALJ"). (R. 164-174). ALJ Walter V. Lassiter, Jr. ("the ALJ") convened an in-person hearing on February 2, 2015. (R. 100-142). Welch was represented by an attorney. The ALJ received direct testimony from Welch. The remaining evidentiary record consisted of medical reports from treating sources and residual functional capacity assessments completed by a medical consultant who reviewed Welch's medical records upon request of Alabama Disability Determination Services.[5] Welch's counsel avers that ALJ Lassiter requested an off-the-record pre-hearing conference and as a result of that conversation, Welch alleges ALJ bias which resulted in a hearing that was not fair and impartial. The ALJ rendered an unfavorable verdict on May 22, 2015. (R. 36-61). On September 10, 2015, the Appeals Council granted Plaintiff's request for review, vacated the decision, and

---

[5] Peter Sims, M.D. (R. 147-153). "A medical consultant is a person who is a member of a team that makes disability determinations in a State agency, as explained in § 404.1615, or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves." 20 C.F.R. § 404.1616(a)(2005).

remanded the case as to three issues with an order to conduct a new evidentiary hearing. The Appeals Council rejected the argument of bias and sent the case back to the same ALJ. Prior to the hearing, counsel requested that a new ALJ be assigned and that ALJ Lassiter recuse himself. (R. 427-28, 440-41). A new hearing was held before ALJ Lassiter on February 5, 2016 and he denied the request for recusal. (R. 62-99). On June 20, 2016, the ALJ again rendered an unfavorable verdict. (R. 18-35). On September 22, 2016, the Appeals Council denied Welch's second request for review (Tr. 1-7). This Social Security Appeal was filed on November 16, 2016. *See* Doc. 1, Complaint.

## V. ADMINISTRATIVE DECISION

Employing the five-step process, the ALJ found that Welch has not engaged in substantial gainful activity since the alleged onset date (Step 1); has severe impairments (Step 2);[6,7] the impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth in the listings (Step 3); and Welch can perform his past relevant work (Step 4). (R. 24-31). As such, Welch failed to meet his prima facie case for disability.

At Step Four, the ALJ found Welch had the RFC to perform a reduced range of medium work. (R. 26). Specifically, after evaluating the entire record, the ALJ determined Welch would be able to sit at least two hours without interruption and at least six hours of the course of an

---

[6] The ALJ found the following "severe" combination of impairments: obesity; hypertension; history of trigger finger (right hand) possibly due to degenerative changes of the thumb , metacarpophangeal and carpometacapal joints with flexion deformity involving the little finger proximal interphalangeal joint; questionable chronic pain syndrome; arthralgia (shoulders); mild-to-moderate global spondylitic changes, lumbar spine; history of hives/uticaria, without evidence of cancer with evidence of noncompliance; history of acute bronchitis with dyspnea and ongoing tobacco abuse; and history of dental abcess without evidence of cancer (R. 24).

[7] The ALJ also indicated the mental impairments of generalized anxiety and major depressive disorder, moderate (complex grief reaction), considered singly and in combination, do not cause more than minimal limitations in the claimant's ability to perform basic mental work activities and are therefore nonsevere.

eight-hour work day and can stand and/or walk at least two hours without interruption at least six hours over the course of an eight-hour workday. *Id*. Further, the ALJ indicated Welch cannot climb ropes, poles, or scaffolds; can occasionally climb ramps, stairs, and ladders; can frequently work in humidity, wetness, and extreme temperatures; can frequently balance, stoop, kneel, and crouch; can occasionally crawl; and can frequently work with operating hazardous machinery. *Id*. Finally, he noted Welch can frequently use his upper extremities for pushing, pulling, handling, fingering, and reaching overhead. *Id*.

Based on these RFC findings, the ALJ determined Welch could perform past relevant work and did not move to step 5.[8] (R. 31). The ALJ used Vocational Expert testimony in reaching this conclusion. Consequently, the ALJ found Welch has not been disabled since the alleged onset date. *Id*.

## VI. Issues

Welch identifies a single issue for appeal: The Commissioner's [ALJ] off-the-record comments revealed bias which deprived Mr. Welch of a fair and impartial hearing. *See* Doc. 16, Pl. Br. at p. 4. The Commissioner re-characterizes the issue as essentially whether substantial evidence supports the ALJ's decision. *See* Doc. 17, Def. Br. at p. 1. The bulk of the Commissioner's brief focuses on whether the record supports the ALJ's conclusion but does eventually address the claim of bias in the final portion of the brief. *Id*. at p. 8-10.

## VII. Discussion and Analysis

"A fair trial in a fair tribunal is a basic requirement of due process" and "applies to administrative agencies which adjudicate as well as to courts." *Winthrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L.Ed.2d 712 (1975). The Eleventh Circuit previously recognized the

---

[8] The ALJ did move to Step 5 in the first decision from May 22, 2015. However, as that opinion was vacated and remanded by the Appeals Council, the Court does not consider that finding at this stage.

critical role played by the ALJ in the disability review process. "The Social Security Act 'contemplates that disability hearings will be individualized determinations based on evidence adduced at a hearing.' A claimant is entitled to a hearing that is both full and fair." *Miles*, 84 F.3d at 1400 (quoting *Heckler v. Campbell*, 461 U.S. 458, 103 S. Ct. 1952, 1957, 76 L.Ed.2d 66 (1983)). Moreover, the Court recognized the critical role of the ALJ:

> The ALJ plays a crucial role in the disability review process. Not only is he duty-bound to develop a full and fair record, he must carefully weigh the evidence, giving individualized consideration to each claim that comes before him. Because of the deferential standard of review applied to his decision-making, the ALJ's resolution will usually be the final word on a claimant's entitlement to benefits. *The impartiality of the ALJ is thus integral to the integrity of the system*.

*Id.* at 1401 (emphasis added).

Additionally, a hearing before an ALJ is not an adversarial proceeding and the ALJ has an obligation to develop a full and fair record. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). The ALJ acts in an inquisitorial role and many protections afforded by an adversarial system are lacking in the Social Security context. *See Small v. Barnhart*, 329 F. Supp.2d 1272, 1277 (N.D. Ala. 2004). The ALJ must develop and elicit facts that are favorable as well as unfavorable to the claimant. *Cowart*, 662 F.2d at 735 (citations omitted). Therefore, a biased ALJ may fail to properly develop the record (whether by design or inadvertence). The failure to develop the record may never been apparent when reviewing a written record which precludes meaningful review. As such, the Court cannot agree with the Commissioner's statement that any bias would be harmless. *See* Doc. 17 at p. 10. Further, the Court takes issue with facets of the ALJ's opinion. As individual matters they would likely merit remand, but certainly when considered jointly and in combination with the allegation of bias, warrant further development of the record.

First, the Commissioner asserts in her brief that "[t]he ALJ did not rely on any

extrajudicial sources to determine that Plaintiff had a history of dishonesty with the IRS, and indeed Plaintiff admitted to it during the subsequent hearing." *See* Doc. 17 at p. 9. However, when reviewing the transcript of the hearing, such is not the case. The exact testimony excerpts are as follows:[9]

> Q: Okay. All right. And what I was sharing with counsel – I have an exhibit – when you talked to the state agency, you told them that from 1996 to 2003 you worked at the Montgomery Board of Education; correct?
> A: Yes, sir.
> Q: And you reported that you earned $140,000 a year. Is that correct?
> A: Yes, sir.
> Q: And when I went to your records, in terms of the pay you reported for Social Security purposes, what did you report?
> A: What did I report?
> Q: Mm-hmm. When you filed your taxes, did you advise the government that you earned $140,000 a year?
> A: I don't know. My mom was handle [sic] all of my taxes. I just – I had nine people – Mexicans that worked for me. I didn't know – I didn't have their Social Security numbers. And when she passed away, I didn't know what to do. All I knew what to do – I knew how to make money. That's it. When she passed away, I was lost.
> …
> …
> …
> Q: And per your testimony, I am to accept that you had no idea what was going on with your taxes?
> A: My mom handled it all.
> Q: When did your mother pass?
> A: I want to say '99. I think she went in '99.
> Q: Okay. So being educated, being skilled, being a manager, what did you do next in terms of your taxes?
> A: I didn't know what to do.
> Q: So you just elected not to report taxes?
> A: Well, I figured the accounting with the Board of Education was handling that part.

---

[9] The first hearing also addressed these matters. Welch also indicated in that hearing his belief that his mom was handling his taxes, payroll, and everything. R. 110, 113. For the sake of brevity, the Court does not quote those excerpts here. But, they also do not support the Commissioner's statement that Welch admitted a history of dishonesty. Rather, they show a failure to file taxes. While certainly the Court does not condone the failure to pay taxes, it cannot automatically assume it was dishonest. Rather, if this is something the ALJ wished to rely upon as a basis for disputing credibility, it should be addressed openly in the written opinion especially in light of the off-the-record prehearing conference, the allegation of bias, and the refusal to recuse.

> Q: And when you were working as a mechanic?
> A: Mechanic?
> Q: Mm-hmm. In 2009, making $1,000 a month – Adam Robins Transmission.
> A: Oh, no. I didn't – I didn't –
> Q: Didn't what?
> A: I didn't file then.
> Q: Why?
> A: Don't know. I was just –
> Q: I'm listening.
> A: I didn't know what to do.
> Q: So as the judge, with pretty much a decade without any reported earnings and now you're seeking disability, how should I interpret that?
> A: (no verbal response)
> Q: If you were sitting here, would you find the person there credible based on the testimony you just gave?
> Atty: Judge, I object. He's not a judge.
> ALJ: I didn't ask him –
> Q: Please answer the question.
> ALJ: I asked him about credibility.
> Clmt: I'm a honest person, a hard worker, and I –
> Q: And over a decade without reporting taxes is somebody else's fault?
> A: I wouldn't blame it on nobody but myself, you know.
> …
> …

(R. 71-74). While the Plaintiff admitted he had not filed taxes, he did not admit to dishonesty with the IRS. Rather, he provided an explanation of confusion and belief that someone else handled his taxes. It is not for this Court to assess whether that explanation is credible. However, the Commissioner's statement that Plaintiff "admitted "to his history of dishonesty with the IRS in the hearing is not what the transcript reflects. Moreover, while perhaps this was a credibility assessment made by the ALJ, there is no reference to it in his written opinion. The allegations involving the off-the-record conference and the ALJ's statement in the beginning of the hearing that "if he had reported his income, it would not be a Title XVI case" raise concerns that the ALJ had reached an adverse credibility determination prior to the start of the hearing and prior to hearing Welch's testimony. (R. 66-67). Looking through the lens of fairness due a claimant, an ALJ who is predisposed on a claimant's credibility prior to start of the hearing or

even hearing the testimony could not discharge the obligation to fairly and impartially develop the facts both for and against the claimant. While the Court does not find the ALJ had overt animus against the claimant or counsel, the appearance of implicit bias is too great to overcome. Given the fact the ALJ spent time in a pre-hearing off-the-record conference and again on the record making such a point about the lack of credibility due to Welch's failure to pay taxes, it begs the question on why it was not addressed in the opinion itself. Rather, the ALJ seems to painstakingly find other reasons to reject Welch's testimony and all three medical opinions – both treating and consulting – who evaluated the record.

      Next, the ALJ's comment that it would not be a Title XVI case had Welch paid taxes should be addressed more fully in the record with an assessment of whether Welch currently qualifies under the Social Security Administration's requirements for SSI – specifically whether he has "limited income" and "limited resources." If the ALJ determined that Welch didn't qualify based on his prior income or resources, then that should be addressed. This is especially true in light of the suggestion of poverty in other portions of the record. For example, the record contains a letter requesting an expedited hearing due to extreme poverty resulting in his power and utilities being cut off. Additionally, Welch receives food stamps which has a poverty requirement. In his opinion, the ALJ expresses doubt regarding Welch's mental health since the record does not contain significant medical records documenting treatment. However, when combined with the prior statements of poverty and lack of insurance, the record suggests that the ALJ should have inquired into the failure to seek treatment. Therefore, "the ALJ may not draw an adverse inference from a claimant's lack of medical treatment without first considering the claimant's explanation for his failure to seek treatment." *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (citing Social Security Regulation 96-7 at 7, 1996 WL 374186, 1996 SSR

LEXIS 4). This is especially true when the ALJ elects to disregard the opinions of Dr. Follinger (consulting examining psychologist) and Dr. Sims (state consulting psychiatrist) who both opined that Welch had some mental health difficulties which could affect his ability to work.

Third, additional misstatements about the evidence are in the ALJ's reference to the 2014 timeframe when Welch briefly drove a dump truck and 18-wheeler. The ALJ states "[t]he claimant testified that it was his blood pressure, and not his hands, that caused him to stop working." (R. 27). However, a review of Welch's testimony indicates that Sayer terminated him because he "wasn't capable or healthy enough. [He'd] be too much of a risk factor, due to my hands and my back." (R. 79). Later, Wiregrass also said he "wasn't physically able to work" due to his blood pressure, his back, and his hands. (R. 80-81). The ALJ later finds that Welch is capable of performing his past relevant work as a truck driver or a dump truck driver. However, the ALJ fails to reconcile that determination with the fact two truck companies released him due to his failed medical results and failed health card. (R. 108-109). The ALJ did not provide any alternatives with a Step Five analysis; thus, the Court cannot find the error harmless.

Fourth, the ALJ must make specific and well-articulated findings in step 3 as to the effect of the combination of impairments. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010). "The ALJ is required to demonstrate that it has considered all of the claimant's impairments, whether severe or not, in combination." *Id.* (citing *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1991) (explaining that the ALJ must make "specific and well-articulated findings as to the effect of the combination of impairments."). In step two, the ALJ found several severe physical impairments and also determined that in combination they are also severe. (R. 24). He also found that Welch's mental impairments were nonsevere. *Id.* Here, the ALJ spent a great deal of time in the determination on whether or not a condition was severe.

However, when the ALJ moves to Step 3, he perfunctorily states "[a]s for the claimant's obesity, it does not increase the severity of claimants coexisting impairments to the extent the combination of impairments meets the requirements of a listing." (R. 26). The ALJ seemingly bases this determination on his later statement in the opinion when he states "[t]here was no testimony offered at the hearing that would lead the undersigned to find the claimant has any significant limitations imposed on him due to his weight." (R. 29). While that statement is specific, it is not well-articulated or supported. In reviewing the hearing transcript, it also does not appear that the ALJ sought to elicit such information before drawing that conclusion. While certainly the claimant could have offered it, the ALJ's role is to develop the record on such matters.

Ultimately, the Court cannot conclude that substantial evidence supports the ALJ's determination because the ALJ failed to fully develop the record. Whether or not this is a result of bias, the Court cannot fully determine. Ultimately, this case merits remand. This conclusion, however, in no way implies a finding of disability. Further, because the impartiality of the ALJ is integral to the integrity of the system and there are some questions as to bias in this case, the remedy is to assign a new ALJ to conduct the hearing. *See Miles*, 84 F.3d at 1401 (citing 20 C.F.R. § 404.940)

## VIII. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes the ALJ erred and substantial evidence does not support the decision. Accordingly, this case will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion. A separate judgment will be entered.

DONE this 20th day of February, 2018.

                                            /s/ Terry F. Moorer  
                                            TERRY F. MOORER  
                                            UNITED STATES MAGISTRATE JUDGE